UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSEPH DAVIS, JR.,

          Plaintiff,

v.                                      Case No.  5:04-cv-213-Oc-GRJ

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits and Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 3), and both parties have filed briefs outlining their respective positions. (Docs. 8 & 9).  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On December 13, 1996, Plaintiff filed an application for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of September 1, 1994 (R. 73-75).  Plaintiff later amended his onset date to April 1, 1996.  (R. 33).  Plaintiff's application was denied initially and upon reconsideration. (R. 49-54, 63-72).   Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted Plaintiff's administrative hearing on September 14, 1998. (R. 30-48, 388-406). Plaintiff was

represented by David Lopez throughout the course of the hearing. The ALJ issued a decision unfavorable to Plaintiff on October 7, 1998. (R. 16-24, 600-608). Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 7-8). Plaintiff then appealed to this Court.[1]

On February 14, 2003, this Court reversed and remanded the case directing the ALJ to: (1) update the medical record from treating sources; (2) obtain consultative internal medicine and mental status examinations; (3) properly weigh all of the treating and examining source opinions, as well as the non-examining source opinions, and sufficiently explain the weight accorded to each opinion; (4) consider the Plaintiff's physical and mental residual functional capacity, utilizing a function-by-function assessment of the amount of each work-related activity the Plaintiff can perform; (5) refer to specific evidence of record to support his residual functional capacity determination; (6) evaluate the Plaintiff's subjective complaints of pain, fatigue and shortness of breath, using a proper credibility evaluation; (7) obtain the testimony of a vocational expert; and (8) conduct any further proceedings the Commissioner deems appropriate. (R. 619-622). The Appeals Council remanded the case back to the ALJ on June 13, 2003. (R. 623-25.)

A second administrative hearing was held before a different ALJ on November 5, 2003 (R. 649-90). At that hearing, Plaintiff amended his claim to one for a closed period of benefits for the time period of December 10, 1996 through April 30, 1999. (R. 652-

---

[1] On January 12, 2001, while Plaintiff's appeal before this Court was pending, he filed a second application for a period of disability, disability insurance benefits and SSI, alleging an onset date of September 1, 1994. (R.421-423). Plaintiff's application was denied initially and upon reconsideration. (R. 407-10, 414-15, 417-18). Plaintiff requested a hearing before an ALJ but ultimately withdrew his request. (R. 380-81). Accordingly, Plaintiff's second application is not at issue in this current appeal.

53). The ALJ entered a decision unfavorable to Plaintiff on March 16, 2004. (R. 368-79). The Appeals Council denied Plaintiff's request for review, making the March 16, 2004 hearing decision the final decision of the Commissioner. On May 26, 2004, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] *See* 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

---

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## IV. **SUMMARY OF THE RECORD EVIDENCE**

During the closed period at issue, Plaintiff was forty-two (42) to forty-five (45) years old. (R. 373, 655.) He graduated from high school (R. 34)[23] and has previous work experience as a restaurant cashier, cook, waiter and an office manager for an AIDS network. (R. 35-36, 42-43). Plaintiff contends that during the closed period he was unable to work because he suffered from symptoms related to his HIV+ status, non-insulin dependent diabetes mellitus and high blood pressure. (R. 37-8). However, Plaintiff's claim and this appeal focus on Plaintiff's allegedly disabling fatigue resulting from his HIV medication.[24]

---

[20] Wolfe at 1077-78.

[21] *See id.*

[22] *See* Doughty at 1278 n.2.

[23] During the September 14, 1998 hearing, Plaintiff testified that he completed one and a half years of college. (R. 34). However, at the second hearing, Plaintiff testified that he started but withdrew from college. (R. 663).

[24] In his opinion, the ALJ noted that "claimant alleged that he was unable to work due to his HIV+ status, non-Insulin dependent diabetes mellitus and high blood pressure." (R. 376). However, at both hearings, Plaintiff testified that the reason he could not work was the fatigue resulting from his HIV

(continued...)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that for the period beginning December 10, 1996 through April 30, 1999, Plaintiff suffered from asymptomatic HIV, borderline diabetes mellitus, complaints of migraine headaches, a history of left chest wall shingles, a history of oral candidiasis, an adjustment disorder with depressed mood, a personality disorder with dependent and anti-social facets, a history of nicotine abuse, a history of drug abuse until 1992 and a history of alcohol abuse in remission. (R. 375). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light to sedentary work activities." (R. 377). In reaching this conclusion, the ALJ found that Plaintiff's testimony with respect to allegations of functional limitations was not fully credible. (R. 376). Specifically, the ALJ found:

> Considering the objective medical findings together with the claimant's activities of daily living during the period at issue, the undersigned finds that the claimant's testimony with respect to allegations of functional limitations was not fully credible.

Plaintiff was diagnosed with HIV in 1992. (R.37). From January 30, 1997 through May 8, 1997, Plaintiff was treated by various health care providers at the Harris County Hospital District in Texas. (R. 262-83). From July 10, 1997 through September 11, 1998, Plaintiff was treated by various health care providers at the Marion County

---

[24](...continued)
medication.  (R. 37, 689).

Health Department. Plaintiff reported complaints of fatigue to the Marion County Health Department on at least 8 occasions. (R. 309, 316, 323, 335, 343, 352, 357-58).[25]

Dr. Mario Medero performed a consultative physical examination of Plaintiff on September 24, 1997. (R. 284-87). At that time, Plaintiff reported to Dr. Medero that he was experiencing chronic fatigue "especially after taking his suppressive medication." (R. 284). Dr. Medero's diagnosis included "HIV, stable and doing well on current medications, but with some side effects of chronic fatigue due to medicine regimen." (R. 287).

Allen Hodges, Ph.D., performed a consultative psychological exam of Plaintiff on October 7, 1997. (R. 288-90). Dr. Hodges noted that he was advised by Plaintiff's father that Plaintiff sleeps most of the time. (R. 289) Dr. Hodges further noted that Plaintiff has "no stamina, complains of back and joint pain, attributed to HIV status." (Id.)[26]

At both hearings, Plaintiff testified that he was not able to work because of fatigue resulting from his HIV medication. (R. 45, 673, 679 ).[27] At the first hearing on September 14, 1998, Plaintiff testified that he slept between four and six hours a night. (R. 41). He testified that he felt best in the morning and was currently working from 9:00 a.m. to 1:00 p.m at the AIDS Network. (R.45). Plaintiff testified that he was supposed to

---

[25]The dates on which Plaintiff noted his fatigue were July 10, 1997; July 22, 1997; August 26, 1997; October 7, 1997; December 2, 1997; February 23, 1998; April 6, 1998; and July 8, 1998.

[26] The ALJ also noted medical examinations conducted after the closed period by Dr. Francisco J. Camino, an eye doctor and Rodney A. Poetter, Ph.D. (R.375). However, these examinations are not relevant because Plaintiff has taken the position that he was able to return to work after April 1999 because his medication was changed and he no longer suffered from disabling fatigue.

[27] Plaintiff testified that his worst symptom is fatigue, but that he also suffers from neuropathy, blurred vision and pain in his head and lower back. (R. 45-46).

work five days a week, but that he averaged four days a week because of his health. (R. 42-43)  Plaintiff testified that he could sit for six hours if he was able to get up and move around after about an hour or two and he could stand for two or three hours at a time. (R. 38-39).  Plaintiff further testified that he could walk about two blocks and lift about 25 pounds.  (R. 39).  Plaintiff testified that he goes to church on Sunday and that he has a couple of friends through the AIDS Network.  (R. 44)

At the November 5, 2003 hearing Plaintiff testified that during the closed period he was "always tired and [ ] slept a lot" and he "couldn't stay awake that long with that medication."  (R. 673).  Plaintiff testified that he reported his fatigue to his doctors but that there was no other medicine available to treat HIV at that time.  (Id.)  Plaintiff testified that he was awake for 20 minutes in the morning, a half-hour in the afternoon and a couple of hours at night and that he spent his awake time watching television.  (R. 674-75).   Plaintiff testified that he began working 20 hours a week for the AIDS Network in February 1998, however he still suffered from fatigue and forgetfulness and had to take time off of work. (R. 677-78, 683).  Plaintiff testified that he was able to resume full-time employment in May 1999 because his medications were changed. (R. 677).

Dr. David San Fillippo, a vocational expert, testified that if Plaintiff's testimony as to his fatigue was found credible, Plaintiff would not be able to work on a consistent basis in the light or sedentary jobs identified by Dr. San Fillippo. (R. 685).[28]

---

[28] Dr. San Fillippo cited assembler of small parts, coded 706.684-022 in the *Dictionary of Occupational Titles ("DOT")*, with 750,000 jobs in the national economy and 15,500 jobs in the Florida economy.  He also cited surveillance systems monitor, coded 379.367-010 in the *DOT*, with 125,000 jobs in the national economy and 8,500 jobs in the Florida economy.  He also cited general office clerk coded
(continued...)

## V. DISCUSSION

Plaintiff argues that the ALJ improperly analyzed his subjective complaints of fatigue because the ALJ failed to make a proper credibility determination. For the following reasons, the Court agrees and concludes that the ALJ's credibility finding was not adequate and it was not supported by substantial evidence.

In evaluating disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms, such as fatigue, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[29] The Eleventh Circuit has set forth a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.[30] The "pain standard", which applies to complaints of subjective conditions other than pain, requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.[31]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the

---

[28](...continued)
245.367-018 in the *DOT* with 1.4 million jobs in the national economy and 77,500 such jobs in the Florida economy. (R.687-89).

[29] 20 C.F.R. § 404.1528.

[30] Id. at 1560.

[31] Id.

record must be obvious as to the credibility finding.[32] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[33] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[34] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[35] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[36] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[37]

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold"[38] assessment to Plaintiff's subjective complaints by noting the Plaintiff's complaints of HIV+ status, non-insulin dependent diabetes mellitus and high

---

[32] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[33] Foote at 1562-1563.

[34] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[35] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[36] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[37] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[38] Marbury, 957 F.2d at 839.

blood pressure. (R. 376.) While the ALJ did not cite the exact language of the standard, he did state that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." (R. 376.) This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard. Moreover, the ALJ cited 20 C.F.R. §§ 404.1529 and 416.929, which contain the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[39]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, HIV, that could be expected to give rise to fatigue.[40] Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding his level of fatigue were not fully credible.

In reaching this conclusion, the ALJ broadly stated that "[c]onsidering the objective medical findings together with the claimant's activities of daily living during the period at issue" Plaintiff's testimony with respect to allegations of functional limitations was not fully credible. (R. 376). However, the ALJ did not specify which objective medical findings or which daily activities contradicted Plaintiff's testimony of disabling fatigue.

---

[39] See Wilson, 284 F.3d at 1226.

[40] Presumptively, the ALJ determined that Plaintiff's diabetes and high blood pressure would not be expected to give rise to fatigue, because he noted that Plaintiff's diabetes was controlled by diet and his high blood pressure was controlled by medicine. (R. 376).

Plaintiff consistently complained of fatigue to both his treating doctors (R. 309, 316, 323, 335, 343, 352, 357-58) and during his consultative examinations (R. 284, 289). The Court has not been able to find (nor have the parties cited) any portion of the record in which any medical professional questioned or challenged Plaintiff's complaints of fatigue. Thus, the ALJ's finding that the objective medical evidence contradicts Plaintiff's complaints of fatigue is not supported by substantial evidence in the record. Conversely, if there is objective medical evidence in the record that contradicts Plaintiff's complaints of fatigue, the ALJ has failed to identify the medical evidence or discuss how the objective medical evidence contradicts Plaintiff's complaints of fatigue. Likewise, the ALJ discussed several daily activities in the body of his opinion, but did not specify which, if any, contradicted Plaintiff's testimony.[41] Moreover, the ALJ did not identify any portions of Plaintiff's testimony that he deemed to be not credible.

Thus, although the ALJ "explicitly" articulated two broad reasons to discredit Plaintiff's complaints of fatigue (i.e., objective medical findings and Plaintiff's daily activities), those reasons are not supported by substantial evidence and therefore are not "adequate." Consequently, because the ALJ's decision to discredit Plaintiff's complaints of disabling fatigue is not supported by substantial evidence, this matter is due to be remanded for the ALJ to reconsider the effects of Plaintiff's fatigue on his ability to perform basic work activities.

## VI. CONCLUSION

---

[41] For example, the ALJ noted that Plaintiff testified that "he did not sleep well and had concentration problems, but he was able to watch television." (R. 376). The ALJ did not articulate how or in what manner Plaintiff's ability to watch television contradicts Plaintiff's testimony that he did not sleep well and had trouble concentrating.

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner for the Administrative Law Judge to reconsider the effects of Plaintiff's fatigue on his ability to perform basic work activities, and to conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on this 12th day of August, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel